Tina Wolfson (SBN 174806)
*twolfson@ahdootwolfson.com*
Deborah De Villa (SBN 312564)
*ddevilla@ahdootwolfson.com*
**AHDOOT & WOLFSON, PC**
2600 W. Olive Avenue, Suite 500
Burbank, CA 91505-4521
Telephone: 310.474.9111
Facsimile: 310.474.8585

Bradley K. King (SBN 274399)
*bking@ahdootwolfson.com*
**AHDOOT & WOLFSON, PC**
521 Fifth Avenue, 17th Floor
New York, NY 10175
Telephone: 917.336.0171
Facsimile: 917.336.0177

*Attorneys for Plaintiff and the Proposed Class*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

RODRIGO CORAZA, individually and on behalf of all others similarly situated,

Plaintiff,

v.

REVOLVE GROUP, INC.,

Defendant.

Case No. 8:26-cv-03389

**CLASS ACTION COMPLAINT**

**ACTION SEEKING STATEWIDE OR NATIONWIDE RELIEF**

**JURY TRIAL DEMANDED**

Plaintiff Rodrigo Coraza ("Plaintiff"), individually and on behalf of all others similarly situated, upon personal knowledge of facts pertaining to himself and on information and belief as to all other matters, by and through undersigned counsel, brings this Class Action Complaint against Defendant Revolve Group, Inc. ("Revolve" or "Defendant").

## NATURE OF THE ACTION

1. Plaintiff brings this class action individually and on behalf of all other individuals who had their sensitive personal and financial information, including their names, contact information, mailing addresses, payment card numbers, and payment card expiration dates (collectively, "Personal Information"), disclosed to unauthorized third parties during a data breach compromising Revolve's e-commerce platform in September 2026 (the "Data Breach").

2. Defendant Revolve is an online fashion retailer headquartered in Cerritos, California, that operates the Revolve.com and FWRD.com shopping websites.[1] In the ordinary course of its business, Defendant collects and maintains its customers' Personal Information, and it invites customers to save their payment cards to their online shopping accounts so that they need not re-enter them at checkout.

3. Defendant expressly recognizes the sensitivity of this information. Defendant tells its customers that "REVOLVE is committed to maintaining the highest levels of security and protection against fraud," and that it stays up to date with the latest security technologies to ensure that customers' credit card information is "confidential and safe."[2]

4. Nevertheless, on or about September 11, 2026, an unauthorized actor accessed Revolve's e-commerce platform and, according to Revolve, "may have

---

[1] *See* Revolve Group, Inc., Annual Report (Form 10-K) (fiscal year ended Dec. 31, 2025), https://www.sec.gov/Archives/edgar/data/1746618/000119312526071307/rvlv-20251231.htm (last visited Nov. 12, 2026).

[2] REVOLVE, *Payment*, https://www.revolve.com/payment (last visited Nov. 12, 2026).

obtained, through automated means," the name, contact information, payment card number, and payment card expiration date of customers who saved payment information to their online shopping accounts.[3] Revolve has reported that 1,515,073 individuals were affected by the Data Breach.[4]

5. Defendant did not identify the intrusion until September 29, 2026—eighteen days after it began—and did not begin notifying affected customers until on or about October 29, 2026. And the unauthorized actor obtained full payment card numbers, not merely the last four digits that merchants customarily display to account holders. On information and belief, this means that Revolve stored or exposed those numbers in a form that could be read and retrieved through its customer-facing platform, contrary to the industry standards that Revolve has acknowledged bind it.

6. Defendant was well aware of, or should have known of, its data security shortcomings. Defendant knew and understood the importance of safeguarding the payment card information entrusted to it by Plaintiff and Class members, and the foreseeable consequences of its systems being breached. Despite this, Defendant did not take adequate cybersecurity measures to prevent the Data Breach.

7. As a result of Defendant's conduct and the resulting Data Breach, Plaintiff's and Class members' privacy has been invaded, their Personal Information is now in the hands of criminals, and they face an imminent and ongoing risk of fraud. Accordingly, these individuals now must take immediate and time-consuming action to protect themselves, including by monitoring their accounts, contacting their card issuers, and canceling and replacing compromised payment cards.

---

[3] Revolve Group, Inc., Current Report (Form 8-K) (Oct. 29, 2026), https://www.sec.gov/Archives/edgar/data/1746618/000119312526439022/rvlv-20261029.htm (last visited Nov. 12, 2026).

[4] Eduard Kovacs, *Revolve Puts Data Breach Victim Count at 1.5 Million*, SecurityWeek (Nov. 9, 2026), https://www.securityweek.com/revolve-puts-data-breach-victim-count-at-1-5-million/ (last visited Nov. 12, 2026).

## PARTIES

***Plaintiff Rodrigo Coraza***

8. Plaintiff Rodrigo Coraza is an adult citizen of the state of California and resides in Orange County, California. Prior to the Data Breach, Plaintiff was a customer of Defendant and maintained an online shopping account with Revolve. In connection with his purchases, Plaintiff provided Defendant with his Personal Information, including his name, address, contact information, and payment card information.

9. Plaintiff discovered unauthorized activity on his Revolve account when an unknown individual accessed his account, changed his password, and made unauthorized charges to his credit card. Plaintiff subsequently received a Notice of Data Breach from Defendant informing him that his Personal Information may have been compromised in the Data Breach.

10. Following the Data Breach, Plaintiff has experienced an increase in unwanted spam telephone calls, text messages, and emails. As a result of Defendant's failure to adequately safeguard his Personal Information, Plaintiff has suffered actual fraud, the loss of privacy and confidentiality of his Personal Information, and an increased risk of future fraud and misuse of his Personal Information.

***Defendant Revolve Group, Inc.***

11. Defendant Revolve Group, Inc. is a corporation organized under the laws of the State of Delaware with its principal place of business located at 12889 Moore Street, Cerritos, California 90703. Revolve sells apparel, footwear, accessories, and beauty products to consumers through its REVOLVE and FWRD websites and mobile applications, and reported net sales of approximately $1.23 billion for fiscal year 2025.[5]

12. Defendant operates Revolve.com and FWRD.com directly and through wholly owned subsidiaries, including Eminent, Inc. and FWRD, LLC, and sent the

---

[5] *See* Revolve Group, Inc., Annual Report (Form 10-K) (fiscal year ended Dec. 31, 2025), https://www.sec.gov/Archives/edgar/data/1746618/000119312526071307/rvlv-20251231.htm (last visited Nov. 12, 2026).

notices of the Data Breach to affected customers in its own name. Plaintiff reserves the right to amend this Complaint to name additional Revolve affiliates should discovery reveal their involvement.

## JURISDICTION AND VENUE

13. This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d), because this is a class action in which: (a) there are 100 or more members in the proposed class; (b) at least one member of the proposed class is a citizen of a State different from Defendant; and (c) the claims of the proposed class members exceed the sum or value of $5,000,000, exclusive of interest and costs.

14. Defendant has reported that the Data Breach affected residents of numerous states, including 127,200 residents of Texas and 46,813 residents of Massachusetts.[6] On information and belief, fewer than one-third of the members of the proposed class are citizens of California.

15. This Court has personal jurisdiction over Defendant because Defendant maintains its principal place of business in this District, purposefully directs its business activities toward this District, and the conduct giving rise to Plaintiff's claims occurred, in substantial part, within this District. Defendant's Terms of Service further provide that customers and Defendant submit to the personal jurisdiction of the state and federal courts located within Los Angeles County, California, for disputes concerning privacy and data security.[7]

16. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) and (2) because Defendant resides in this District, maintains its corporate headquarters in

[6] Eduard Kovacs, *Revolve Puts Data Breach Victim Count at 1.5 Million*, SecurityWeek (Nov. 9, 2026), https://www.securityweek.com/revolve-puts-data-breach-victim-count-at-1-5-million/ (last visited Nov. 12, 2026); Allie Jasinski, *Revolve Data Breach Exposed Shoppers' Saved Card Numbers and Expiration Dates*, WISN (Nov. 4, 2026), https://www.wisn.com/article/revolve-data-breach-exposed-shoppers-saved-card-numbers-and-expiration-dates/74334001 (last visited Nov. 13, 2026).

[7] Revolve Group, Inc., *Terms of Service* (last updated July 21, 2026), https://www.revolve.com/r/infoTerms.jsp (last visited Nov. 12, 2026).

Cerritos, California, and a substantial part of the events and omissions giving rise to the claims asserted herein occurred within this District.

## FACTUAL ALLEGATIONS

### A. Defendant Collects and Stores Personal Information

17. Defendant is an online fashion retailer that markets to Millennial and Generation Z consumers and sells almost exclusively online.[8]

18. As a condition of shopping on Revolve.com or FWRD.com, consumers (such as Plaintiff and Class members) must provide Personal Information. Defendant's Privacy Policy confirms that when a customer creates an account or places an order, Defendant asks for the customer's name, email address, phone number, payment information, and billing and shipping address, and that Defendant collects payment card information when a customer makes a purchase.[9]

19. Defendant also invites customers to save a payment card to their online shopping accounts. Defendant's Privacy Policy explains that Defendant uses customer information to "remember your information so that you will not have to re-enter it" on later visits,[10] and Defendant's Terms of Service authorize Defendant to charge purchases to "the payment method specified in your account."[11]

20. The saved-card feature benefits Defendant. Upon information and belief, removing the need to re-enter card details at checkout reduces abandoned purchases and increases the frequency of repeat orders, both of which drive Defendant's revenue.

21. By obtaining, collecting, using, and deriving a benefit from Plaintiff's and Class members' Personal Information, Defendant assumed legal and equitable duties, and

---

[8] REVOLVE, *About Us*, https://www.revolve.com/aboutus (last visited Nov. 12, 2026).

[9] REVOLVE, *Privacy Policy* (last updated July 21, 2026), https://www.revolve.com/privacypolicy (last visited Nov. 12, 2026).

[10] *Id.*

[11] Revolve Group, Inc., *Terms of Service* (last updated July 21, 2026), https://www.revolve.com/r/infoTerms.jsp (last visited Nov. 12, 2026).

knew or should have known of its obligations to protect Plaintiff's and Class members' Personal Information from unauthorized disclosure.

22. Defendant expressly recognized its obligation to safeguard payment card information. Under the heading "Payment Security," Defendant represents that "REVOLVE is committed to maintaining the highest levels of security and protection against fraud," and that it stays up to date with the latest security technologies to ensure that customers' credit card information, contact information, and billing information are "confidential and safe."[12] The only safeguard that page describes is the encryption of information in transit; it says nothing about how Defendant protects the card numbers it stores.

23. Defendant's Privacy Policy in effect from March 27, 2025, until July 21, 2026, likewise contained a "Data security" section stating that Defendant uses certain safeguards intended to secure the personal information it processes.[13] Defendant's Privacy Policy also states that Defendant uses customer information to protect against fraud and unauthorized transactions, "including by identifying potential unauthorized users and/or hackers."[14] Defendant's July 21, 2026 revision of its Privacy Policy—adopted less than two months before the Data Breach—removed the "Data security" section entirely.

24. Plaintiff and Class members relied on Defendant to keep their Personal Information confidential and securely maintained, to use this information for business purposes only, and to make only authorized disclosures of this information.

25. Plaintiff and Class members provided their Personal Information to Defendant with the reasonable expectation and mutual understanding that Defendant

---

[12] REVOLVE, *Payment*, https://www.revolve.com/payment (last visited Nov. 12, 2026).

[13] REVOLVE, *Privacy Policy* (last updated Mar. 27, 2025), https://www.revolve.com/r/infoSecurity-20250327.jsp (last visited Nov. 12, 2026).

[14] REVOLVE, *Privacy Policy* (last updated July 21, 2026), https://www.revolve.com/privacypolicy (last visited Nov. 12, 2026).

would comply with its obligations to keep such information confidential and secure from unauthorized access.

### B. The Data Breach

26. On or about September 11, 2026, an unauthorized actor accessed Defendant's online shopping platform.

27. According to records of the Indiana Attorney General, Defendant became aware of the intrusion on September 29, 2026—eighteen days later.[15] Defendant's Notice to Plaintiff likewise states that Defendant determined on September 29, 2026, that data involved in the incident contained Plaintiff's name, address, payment card number, and expiration date.

28. On October 29, 2026, Defendant filed a Current Report on Form 8-K with the U.S. Securities and Exchange Commission ("SEC"), disclosing that it "recently became aware of unauthorized access to certain of its systems," and that, based on its investigation, it believed an unauthorized actor may have obtained, through automated means, the name, contact information, payment card number, and payment card expiration date of customers who had saved payment information to their online shopping accounts.[16]

29. Defendant began mailing notice letters to affected customers on or about October 29, 2026. Defendant reported the Data Breach to the attorneys general of numerous states and reported to the Indiana Attorney General that 1,515,073 individuals were affected.[17]

---

[15] Eduard Kovacs, *Revolve Puts Data Breach Victim Count at 1.5 Million*, SecurityWeek (Nov. 9, 2026), https://www.securityweek.com/revolve-puts-data-breach-victim-count-at-1-5-million/ (last visited Nov. 12, 2026).

[16] Revolve Group, Inc., Current Report (Form 8-K) (Oct. 29, 2026), https://www.sec.gov/Archives/edgar/data/1746618/000119312526439022/rvlv-20261029.htm (last visited Nov. 12, 2026).

[17] Eduard Kovacs, *Revolve Puts Data Breach Victim Count at 1.5 Million*, SecurityWeek (Nov. 9, 2026), https://www.securityweek.com/revolve-puts-data-breach-victim-count-at-1-5-million/ (last visited Nov. 12, 2026).

30. Defendant's notice letter told recipients that the data involved contained their name and address and the card number and expiration date of their saved payment card, and advised them to review their payment card statements and report unauthorized charges to their card issuers. Defendant did not offer credit monitoring, identity protection, or reimbursement of any kind.

31. As of the filing of this Complaint, Defendant has not publicly disclosed how the unauthorized actor gained access to its platform; what it means by "automated means"; whether the unauthorized activity was limited to September 11, 2026, or continued until Defendant detected it; whether card security codes, account credentials, or other data were also accessed; whether and how the stored card numbers were encrypted; or whether the stolen data has been offered for sale or used. That information is uniquely within Defendant's possession.

32. Unauthorized individuals can now easily access the Personal Information of Plaintiff and Class members.

### C. <u>Defendant Failed to Comply With Industry Standards and Its Legal Obligations</u>

33. Defendant has repeatedly acknowledged in its annual reports, including its report for fiscal year 2025, that it is subject to laws, regulations, contractual obligations, and industry standards relating to privacy, data protection, and information security, "including, for example, the PCI-DSS."[18]

34. The Payment Card Industry Data Security Standard ("PCI DSS") is the security standard promulgated by the payment card networks and binding on merchants that accept and store payment card data. Version 4.0 of the standard became mandatory

[18] *See* Revolve Group, Inc., Annual Report (Form 10-K) (fiscal year ended Dec. 31, 2025), https://www.sec.gov/Archives/edgar/data/1746618/000119312526071307/rvlv-20251231.htm (last visited Nov. 12, 2026).

in March 2024, and its remaining requirements became mandatory on March 31, 2025—well before the Data Breach.[19] Among other things, PCI DSS requires merchants to:

a. render the primary account number ("PAN") unreadable anywhere it is stored (Requirement 3.5.1);

b. mask the PAN whenever it is displayed so that no more than the first six and last four digits are visible, except to personnel with a legitimate business need (Requirement 3.4.1);

c. deploy, for public-facing web applications, an automated technical solution that continually detects and prevents web-based attacks (Requirement 6.4.2);

d. restrict access to cardholder data to those with a business need to know (Requirement 7); and

e. log and monitor all access to system components and cardholder data, and review those logs promptly to detect anomalies and suspicious activity (Requirement 10).

35. Federal law independently required Defendant to protect its customers' payment card data. Section 5 of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 45, prohibits unfair practices in or affecting commerce. The Federal Trade Commission ("FTC") has for years treated a business's failure to employ reasonable and appropriate measures to protect consumers' personal and financial information as an unfair practice, and has published guidance directing businesses to keep only the sensitive data they need, to protect stored data, to limit access to it, and to monitor networks for unauthorized activity and large volumes of data leaving the system.[20]

---

[19] *See* PCI Security Standards Council, *Payment Card Industry Data Security Standard: Requirements and Testing Procedures*, v4.0.1 (June 2024), https://www.pcisecuritystandards.org/document_library/ (last visited Nov. 12, 2026).

[20] *See* Federal Trade Commission, *Protecting Personal Information: A Guide for Business*, https://www.ftc.gov/business-guidance/resources/protecting-personal-information-guide-business (last visited Nov. 12, 2026).

36. California law imposes the same obligation. A business that owns, licenses, or maintains personal information about a California resident must "implement and maintain reasonable security procedures and practices appropriate to the nature of the information, to protect the personal information from unauthorized access, destruction, use, modification, or disclosure." Cal. Civ. Code § 1798.81.5(b). That duty expressly reaches personal information that a business "retains as part of the business' internal customer account or for the purpose of using that information in transactions with the person to whom the information relates"—precisely the saved payment card data at issue here. *Id.* § 1798.81.5(a)(2).

37. The facts Defendant has disclosed support a strong inference that Defendant failed to implement reasonable security procedures and practices appropriate to the payment card data it chose to store.

38. *First*, the unauthorized actor obtained full payment card numbers. Merchants that store card numbers for future use, and that follow PCI DSS, render those numbers unreadable in storage and display no more than the last four digits to account holders. Upon information and belief, the unauthorized actor could retrieve full card numbers associated with more than 1.5 million customer accounts only because Defendant stored, transmitted, or exposed those numbers through its platform in a readable or readily recoverable form, or failed to restrict access to the systems and keys that could render them readable.

39. *Second*, the unauthorized actor used "automated means" to collect data on a massive scale. Upon information and belief, the unauthorized actor used scripts or bots to send a high volume of requests to Defendant's platform or its supporting interfaces and harvested saved payment data from those responses. Reasonable security for a public-facing e-commerce platform—including the automated web-attack detection and prevention PCI DSS required of Defendant as of March 31, 2025, as well as rate limiting, bot management, and anomaly detection—is designed to identify and block exactly this kind of high-volume, non-human activity before it can extract data at scale.

40. *Third*, Defendant did not detect the intrusion for eighteen days. Upon information and belief, Defendant did not adequately log, monitor, or review access to its customers' stored payment data, and did not maintain alerting sufficient to detect the bulk retrieval of card data affecting more than 1.5 million accounts in a timely manner.

41. *Fourth*, upon information and belief, Defendant kept full card numbers within its own systems rather than relying on payment-processor tokenization, under which a merchant retains only a token that is useless outside its relationship with the processor. Had Defendant tokenized saved cards, the unauthorized actor would have found no usable card numbers to take.

42. These foregoing frameworks are existing and applicable industry standards for reasonable cybersecurity readiness, and Defendant failed to comply with them, thereby opening the door to the Data Breach. Had Defendant implemented reasonable safeguards—protecting stored card numbers, detecting and blocking automated extraction, and monitoring access to cardholder data—the unauthorized actor would not have obtained Plaintiff's and Class members' payment card information, or the scope of the theft would have been substantially reduced.

**D. <u>Impact of the Data Breach</u>**

43. The actual extent and scope, and the impact, of the Data Breach on Defendant's customers remain uncertain. Unfortunately for Plaintiff and Class members, the damage is already done because their payment card information has been disclosed to unauthorized persons during the Data Breach.

44. A payment card number, its expiration date, and the cardholder's name and billing address together make up most of the information needed to use the card for a card-not-present transaction. Upon information and belief, some merchants and payment channels do not require a card security code to complete a transaction, and the stolen information can be used at those merchants without more. The stolen information can also be used to test whether a card remains active and to make targeted phishing contacts—by email, text message, or telephone—in which a criminal who already knows

the cardholder's name, address, card number, and expiration date impersonates Defendant or the card issuer to obtain the remaining security code or other credentials.

45. Because the stolen information can be misused until the compromised card is closed, the reasonable and expected response to the Data Breach—and the response Defendant itself recommended—is to monitor account activity closely, to contact the card issuer, and in many cases to cancel and replace the compromised card. Doing so requires Class members to spend time contacting issuers, waiting for replacement cards, and updating the payment information linked to recurring bills, subscriptions, digital wallets, and online merchant accounts, and can result in missed or late payments and associated fees while the replacement card is pending.

46. Plaintiff and Class members also suffered the loss of the privacy and confidentiality of their financial information, which they entrusted to Defendant on the understanding that Defendant would protect it. They did not receive the benefit of their bargain with Defendant, which included the reasonable data security that Defendant was legally obligated to provide and that was implicit in its invitation to store payment cards on its platform.

47. Defendant continues to maintain Plaintiff's and Class members' Personal Information, including, upon information and belief, payment card information for customers who have not removed their saved cards. Plaintiff and Class members therefore have a continuing interest in ensuring that Defendant implements and maintains reasonable security to protect the information it holds.

**E. <u>Defendant Failed to Act in the Face of a Known Risk of a Data Breach</u>**

48. Payment card data stored by online retailers is a primary target of financially motivated attackers because it can be monetized quickly, either through direct fraudulent purchases or through resale in criminal marketplaces.

49. Automated attacks on e-commerce platforms—including credential stuffing, scraping, and "carding" (the automated testing of stolen card numbers)—are widely known in the retail industry. The PCI Security Standards Council added the requirement

that merchants deploy automated solutions to detect and prevent web-based attacks precisely because such attacks are pervasive.

50. Defendant is, and at all relevant times has been, aware that the payment card information it stores in connection with its business operations is highly sensitive. Defendant's own SEC filings acknowledge that it is bound by PCI DSS and that a failure to comply with data security obligations could result in claims and liability.[21] Despite the well-known risks, Defendant failed to employ adequate data security measures to prevent breaches, including the Data Breach.

51. As a result of Defendant's failure to ensure that its platform was protected and secured, the Data Breach occurred. As a result of the Data Breach, Plaintiff's and Class members' privacy has been invaded, their Personal Information is now in the hands of criminals, they face a substantially increased risk of fraud, and they must take immediate and time-consuming action to protect themselves from such fraud.

## CLASS ALLEGATIONS

52. Plaintiff brings this action individually and as a class action pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(1), 23(b)(2), and 23(b)(3) on behalf of himself and the following Classes:

> **Nationwide Class**
> All citizens of the United States whose Personal Information was compromised as a result of the Data Breach.
>
> **California Subclass**
> All citizens of the State of California whose Personal Information was compromised as a result of the Data Breach.

53. The "Nationwide Class" and "California Subclass" are collectively referred to herein as the "Class."

---

[21] *See* Revolve Group, Inc., Annual Report (Form 10-K) (fiscal year ended Dec. 31, 2025), https://www.sec.gov/Archives/edgar/data/1746618/000119312526071307/rvlv-20251231.htm (last visited Nov. 12, 2026).

54. Excluded from the Class are: (1) any Judge presiding over this action, members of their immediate families, and Court staff; and (2) Defendant, its subsidiaries, parent companies, successors, predecessors, and any entity in which Defendant, or its parents, have a controlling interest, and its current or former officers and directors.

55. California law governs the claims of the Nationwide Class. Defendant is headquartered in California, and its decisions concerning the security of its e-commerce platform and its customers' payment card data were made in and directed from California. Defendant's Terms of Service further provide that they "are governed by the laws of the State of California without regard to conflict of law principles."[22]

56. The Class meets the requirements of Federal Rules of Civil Procedure 23(a) and 23(b)(1), (b)(2), and (b)(3) for all of the following reasons.

57. <u>Numerosity</u>. The number of Class members is great enough such that joinder is impracticable. Defendant has reported that the Data Breach affected 1,515,073 individuals. The disposition of the claims of these Class members in a single action will provide substantial benefits to all parties and the Court. The parties will be able to identify each member of the Class through discovery, including through the records Defendant used to send notice of the Data Breach.

58. <u>Commonality</u>. There are questions of law and fact common to the Class that predominate over any questions affecting only individual members, including:

a. Whether and to what extent Defendant had a duty to protect Plaintiff's and Class members' Personal Information;

b. Whether Defendant's data security procedures and practices prior to and during the Data Breach met the requirements of relevant laws and industry standards, including PCI DSS;

c. Whether Defendant stored or exposed full payment card numbers in a readable or readily recoverable form;

---

[22] Revolve Group, Inc., *Terms of Service* (last updated July 21, 2026), https://www.revolve.com/r/infoTerms.jsp (last visited Nov. 12, 2026).

d. Whether Defendant failed to detect and stop the unauthorized automated activity in a timely manner;

e. Whether Defendant breached its duty to protect Plaintiff's and Class members' Personal Information;

f. Whether the actions and/or inaction of Defendant caused Plaintiff's and Class members' Personal Information to be disclosed or compromised;

g. Whether Defendant was negligent;

h. Whether Defendant breached implied contracts with Plaintiff and Class members;

i. Whether Defendant's conduct violated the UCL and, as to the California Subclass, the CCPA;

j. Whether Plaintiff and other Class members are entitled to injunctive relief; and

k. Whether Plaintiff and other Class members are entitled to damages as a result of Defendant's conduct.

59. Typicality. All of Plaintiff's claims are typical of the claims of the proposed Class he seeks to represent in that: Plaintiff's claims arise from the same practice or course of conduct that forms the basis of the Class claims; Plaintiff's claims are based upon the same legal and remedial theories as the proposed Class and involve similar factual circumstances; there is no antagonism between the interests of Plaintiff and absent Class members; and the injuries that Plaintiff suffered are similar to the injuries that Class members have suffered.

60. Adequacy. Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff has retained counsel experienced in complex class action litigation, including data breach and consumer protection cases. Plaintiff has no interests that are contrary to or in conflict with those of the Class.

61. Predominance. The proposed class action meets the requirements of Federal Rule of Civil Procedure 23(b)(3) because questions of law and fact common to the Class predominate over any questions which may affect only individual Class members. The central liability questions—what security Defendant maintained, whether it was reasonable, and whether its deficiencies caused the Data Breach—turn on Defendant's conduct and will be answered with common evidence.

62. Superiority. The proposed class action also meets the requirements of Federal Rule of Civil Procedure 23(b)(3) because a class action is superior to other available methods for the fair and efficient adjudication of the controversy. Class treatment of common questions is superior to multiple individual actions or piecemeal litigation, avoids inconsistent decisions, presents far fewer management difficulties, conserves judicial resources and the parties' resources, and protects the rights of each Class member. Absent a class action, the majority of Class members would find the cost of litigating their claims prohibitively high and would have no effective remedy.

63. Plaintiff's claims also meet the requirements of Federal Rule of Civil Procedure 23(b)(1) because prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudications that would establish incompatible standards for Defendant. Prosecution of separate actions by individual Class members would also create a risk of individual adjudications that would be dispositive of the interests of other Class members not parties to the individual adjudications, or substantially impair or impede the ability of Class members to protect their interests.

64. Injunctive Relief. This action also satisfies the requirements of Fed. R. Civ. P. 23(b)(2) because Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making injunctive and declaratory relief appropriate with respect to the Class as a whole. Defendant maintained the same security procedures and practices for all Class members' Personal Information and continues to hold that information.

**COUNT I**
**Negligence**
**(On Behalf of Plaintiff and the Nationwide Class)**

65. Plaintiff realleges and incorporates all previous allegations as though fully set forth herein.

66. Defendant was entrusted with, stored, and otherwise had access to the Personal Information of Plaintiff and Class members, including the full payment card numbers that Defendant invited them to save to their online shopping accounts.

67. Defendant knew, or should have known, of the risks inherent to storing the payment card information of Plaintiff and Class members, and to not ensuring that its platform, and the Personal Information contained therein, was secure. These risks were reasonably foreseeable to Defendant.

68. Defendant owed duties of care to Plaintiff and Class members whose Personal Information had been entrusted to it, including a duty to exercise reasonable care in collecting, storing, securing, and protecting that information. Cal. Civ. Code § 1714(a).

69. Defendant's duty of care was informed by Cal. Civ. Code § 1798.81.5(b), which requires businesses to implement and maintain reasonable security procedures and practices appropriate to the nature of the personal information they hold; by Section 5 of the FTC Act, 15 U.S.C. § 45; and by PCI DSS, which Defendant has acknowledged binds it. Plaintiff and Class members are within the class of persons these laws and standards were designed to protect, and the theft of their payment card information is the type of harm they were designed to prevent.

70. Only Defendant was in a position to ensure that its systems were sufficient to protect against breaches and the harms that Plaintiff and Class members have now suffered.

71. A "special relationship" exists between Defendant, on the one hand, and Plaintiff and Class members, on the other hand. Defendant entered into a "special relationship" with Plaintiff and Class members by inviting them to entrust their payment

card information to it for Defendant's commercial benefit, and by agreeing to accept, store, and have access to that information.

72. Defendant breached its duties to Plaintiff and Class members by failing to provide fair, reasonable, or adequate data security, including, upon information and belief, by:

a. storing, transmitting, or exposing full payment card numbers in a readable or readily recoverable form, and failing to render stored card numbers unreadable or to tokenize them;

b. failing to deploy and maintain automated controls on its public-facing platform sufficient to detect and prevent the high-volume, automated extraction of customer data;

c. failing to restrict access to stored cardholder data to those with a legitimate need;

d. failing to adequately log, monitor, and review access to cardholder data so as to detect the Data Breach promptly; and

e. failing to comply with PCI DSS and with its obligations under Cal. Civ. Code § 1798.81.5 and Section 5 of the FTC Act.

73. But for Defendant's wrongful and negligent breach of its duties owed to Plaintiff and Class members, Plaintiff and Class members would not have been injured.

74. The injury and harm suffered by Plaintiff and Class members was the reasonably foreseeable result of Defendant's breach of duties. Defendant knew or should have known it was failing to meet these duties, and that the Data Breach would cause Plaintiff and Class members to experience the foreseeable harms associated with the exposure of their Personal Information.

75. As a direct and proximate result of Defendant's negligent conduct, Plaintiff and Class members have suffered injury, including the loss of the privacy and confidentiality of their Personal Information; time and effort spent responding to the Data

Breach; out-of-pocket costs; and an imminent and ongoing risk of fraud, and are entitled to damages in an amount to be proven at trial.

**COUNT II**

**Breach of Implied Contract**

**(On Behalf of Plaintiff and the Nationwide Class)**

76. Plaintiff realleges and incorporates all previous allegations as though fully set forth herein.

77. This claim is pleaded in the alternative, to the extent no express contract between Defendant and Class members governs Defendant's obligation to secure the payment card information that Class members saved to their accounts.

78. Plaintiff and Class members provided their Personal Information to Defendant, and saved their payment cards to their online shopping accounts, in connection with purchasing goods from Defendant.

79. In connection with their business relationship, Plaintiff and Class members entered into implied contracts with Defendant.

80. Pursuant to these implied contracts, Plaintiff and Class members provided Defendant with their Personal Information and paid Defendant for the goods they purchased. In exchange, Defendant agreed, among other things: (1) to take reasonable measures to protect the security and confidentiality of Plaintiff's and Class members' payment card information; and (2) to protect that information in compliance with the applicable laws, regulations, and industry standards, including PCI DSS.

81. The parties' mutual understanding is demonstrated by Defendant's solicitation of stored card data; its representation that it maintains "the highest levels of security" and keeps customers' credit card information "confidential and safe"; its representation in its Privacy Policy that it used safeguards intended to secure customers' personal information; and its representation that it used customer information to identify unauthorized users and hackers.

82. The protection of Personal Information was a material term of the implied contracts between Plaintiff and Class members, on the one hand, and Defendant, on the

other hand. Had Plaintiff and Class members known that Defendant would not adequately protect its customers' payment card information, they would not have saved their payment cards to Defendant's platform.

83. Plaintiff and Class members performed their obligations under the implied contracts when they provided Defendant with their Personal Information and paid for the goods they purchased.

84. Defendant breached its obligations under the implied contracts with Plaintiff and Class members by failing to implement and maintain reasonable security measures to protect their Personal Information.

85. Defendant's breach of its obligations under the implied contracts with Plaintiff and Class members directly resulted in the Data Breach.

86. Plaintiff and other Class members were damaged by Defendant's breach of implied contracts because: (i) their Personal Information was improperly disclosed to unauthorized individuals; (ii) the confidentiality of their Personal Information has been breached; (iii) they face a substantially increased risk of fraud; (iv) they did not receive the benefit of their bargain; and/or (v) they lost time and money incurred to mitigate and remediate the effects of the Data Breach.

## COUNT III

**Violations of the California Unfair Competition Law,**
**Bus. & Prof. Code §§ 17200, *et seq.* (the "UCL")**
**(On Behalf of Plaintiff and the Nationwide Class)**

87. Plaintiff realleges and incorporates all previous allegations as though fully set forth herein.

88. Defendant's conduct constitutes unlawful and unfair business practices within the meaning of the UCL. Defendant's acts and practices alleged herein occurred in the conduct of its business and emanated from its headquarters in California.

89. Unlawful Prong. Defendant engaged in unlawful business practices by failing to implement and maintain reasonable security procedures and practices to protect its customers' Personal Information, in violation of Section 5 of the FTC Act, 15 U.S.C.

§ 45, and, as to the California Subclass, Cal. Civ. Code § 1798.81.5(b). This claim does not rely on any violation of the CCPA as a predicate.

90. Unfair Prong. Defendant engaged in unfair business practices by soliciting and storing its customers' full payment card numbers for its own commercial benefit while failing to protect them with reasonable security. That conduct offends the public policy, expressed in Cal. Civ. Code § 1798.81.5(a)(1) and Section 5 of the FTC Act, that businesses holding consumers' personal and financial information must protect it. The harm to Plaintiff and Class members outweighed any utility that Defendant's conduct may have produced, and could not reasonably have been avoided by consumers, who had no means to evaluate or improve the security of Defendant's systems.

91. Plaintiff and Class members suffered injury in fact and lost money or property as a result of Defendant's conduct. They paid Defendant for goods with the reasonable expectation that the payment card information they provided and saved in connection with those purchases would be reasonably secured, and they received less than they bargained for.

92. Plaintiff and Class members lack an adequate remedy at law for the relief sought in this claim. Damages cannot compel Defendant to secure the information it continues to hold, and restitution under the UCL does not depend on proof of the elements of Plaintiff's negligence or contract claims.

93. Individually and on behalf of the Class, Plaintiff seeks restitution and injunctive relief, including public injunctive relief requiring Defendant to implement and maintain reasonable security for the payment card and personal information it continues to collect from, and store on behalf of, members of the public who shop on its platform, and all other relief available under this cause of action.

**<u>COUNT IV</u>**
**Violations of the California Consumer Privacy Act,**
**Cal. Civ. Code §§ 1798.100, *et seq.* (the "CCPA")**
**(On Behalf of Plaintiff and the California Subclass)**

94. Plaintiff realleges and incorporates all previous allegations as though fully set forth herein.

95. This claim is pleaded on behalf of Plaintiff and the California Subclass.

96. In 2018, the California Legislature passed the CCPA, giving consumers broad protections and rights intended to safeguard their personal information. Among other things, the CCPA imposes an affirmative duty on businesses that collect personal information about California residents to implement and maintain reasonable security procedures and practices that are appropriate to the nature of the information collected. Cal. Civ. Code § 1798.100(e).

97. Section 1798.150(a)(1) of the CCPA provides: "Any consumer whose nonencrypted and nonredacted personal information, as defined [by Cal. Civ. Code § 1798.81.5(d)(1)(A)] . . . is subject to an unauthorized access and exfiltration, theft, or disclosure as a result of the business' violation of the duty to implement and maintain reasonable security procedures and practices appropriate to the nature of the information to protect the personal information may institute a civil action for" statutory or actual damages, injunctive or declaratory relief, and any other relief the court deems proper.

98. Plaintiff and California Subclass members are "consumers" as defined by Cal. Civ. Code § 1798.140(i) because they are natural persons who reside in California.

99. Defendant is a "business" as defined by Cal. Civ. Code § 1798.140(d) because it is a for-profit corporation that does business in the State of California, collects consumers' personal information, determines the purposes and means of processing that information, and has annual gross revenues in excess of $25,000,000, as adjusted.

100. The information compromised in the Data Breach constitutes "personal information" within the meaning of Cal. Civ. Code § 1798.81.5(d)(1)(A). It consisted of Plaintiff's and California Subclass members' first and last names in combination with

their credit or debit card numbers. Upon information and belief, Defendant's own saved-card checkout, and a substantial number of other card-not-present merchants and payment channels, do not require a card security code, access code, or password beyond the card number and expiration date to charge the card. For those transactions there is no further "required" security code, and the card number and expiration date themselves are the credentials that permit access to the cardholder's financial account.

101. Through the Data Breach, Plaintiff's and California Subclass members' personal information was accessed without authorization, exfiltrated, and stolen in a nonencrypted and nonredacted format, or together with the means to render it readable. The unauthorized actor obtained full card numbers that Defendant itself identified to Class members as having been involved, and Defendant instructed Class members to monitor their cards for fraudulent charges—a warning that would have been unnecessary had the numbers been rendered unusable.

102. The Data Breach occurred as a result of Defendant's failure to implement and maintain reasonable security procedures and practices appropriate to the nature of the information, as alleged above.

103. In accordance with Cal. Civ. Code § 1798.150(b), contemporaneous with the filing of this Complaint, Plaintiff's counsel served Defendant with notice of these CCPA violations by certified mail, return receipt requested. Defendant's implementation of reasonable security after the Data Breach does not constitute a cure. *Id.*

104. Plaintiff presently seeks injunctive and declaratory relief under this claim. If Defendant fails to respond to Plaintiff's notice letter or agree to rectify the violations detailed above within 30 days of the date of written notice, Plaintiff will amend this Complaint to seek actual and statutory damages, and any other relief the Court deems proper, as a result of Defendant's CCPA violations.

## COUNT V
## Unjust Enrichment
## (On Behalf of Plaintiff and the Nationwide Class)

105. Plaintiff realleges and incorporates all previous allegations as though fully set forth herein.

106. This claim is pleaded in the alternative to the implied contract claim.

107. Plaintiff and Class members conferred a monetary benefit on Defendant. They paid Defendant for the goods they purchased and provided Defendant with their Personal Information, including the payment card information that Defendant invited them to save to their online shopping accounts.

108. Defendant appreciated, accepted, and retained these benefits. Defendant used Plaintiff's and Class members' Personal Information to complete their purchases and to facilitate repeat purchases through its saved-card feature, which, upon information and belief, reduces abandoned purchases and increases the frequency of repeat orders, both of which drive Defendant's revenue.

109. Defendant should have used a portion of the revenue it received from Plaintiff and Class members to implement and maintain reasonable security for the payment card information it stored. Instead, Defendant enriched itself by saving the costs it reasonably should have expended on data security measures to secure Plaintiff's and Class members' Personal Information.

110. Defendant has voluntarily accepted and retained these benefits with full knowledge and awareness that, as a result of the misconduct and omissions described herein, Plaintiff and Class members did not receive goods and services of the quality, nature, fitness, or value represented by Defendant—including its representation that it maintains "the highest levels of security" for customers' credit card information—and that reasonable consumers expected.

111. Defendant has been unjustly enriched by its withholding of and retention of these benefits, at the expense of Plaintiff and Class members. Equity and justice militate against permitting Defendant to retain these benefits.

112. Plaintiff and Class members lack an adequate remedy at law. Restitution of the benefits Defendant unjustly retained does not depend on proof of the elements of Plaintiff's negligence or contract claims, and Plaintiff pleads this claim in the alternative to his legal claims to the extent those claims do not afford a complete and adequate remedy.

113. Plaintiff and Class members suffered injury as a direct and proximate result of Defendant's unjust enrichment and seek an order directing Defendant to disgorge these benefits and pay restitution to Plaintiff and Class members.

## PRAYER FOR RELIEF

Plaintiff, individually and on behalf of the Class, by and through undersigned counsel, respectfully requests that the Court grant the following relief:

A. Certify this case as a class action and appoint Plaintiff as class representative and undersigned counsel as class counsel;

B. Award Plaintiff and Class members actual and statutory damages, and monetary damages to the maximum extent allowable;

C. Award declaratory and injunctive relief as permitted by law or equity to assure that Class members have an effective remedy, including enjoining Defendant from continuing the unlawful practices as set forth above and requiring Defendant to render stored payment card numbers unreadable or replace them with processor tokens, maintain controls that detect and block automated data extraction, monitor access to cardholder data, and submit to independent third-party assessments of its compliance with PCI DSS;

D. Award restitution to the maximum extent allowable;

E. Award Plaintiff and Class members pre-judgment and post-judgment interest to the maximum extent allowable;

F. Award Plaintiff and Class members reasonable attorneys' fees, costs, and expenses, as allowable; and

G. Award Plaintiff and Class members such other favorable relief as allowable under law or equity.

**JURY TRIAL DEMANDED**

Plaintiff hereby demands a trial by jury on all issues so triable.

Dated: November 17, 2026

Respectfully submitted,

*/s/ Tina Wolfson*

Tina Wolfson (SBN 174806)
*twolfson@ahdootwolfson.com*
Deborah De Villa (SBN 312564)
*ddevilla@ahdootwolfson.com*
**AHDOOT & WOLFSON, PC**
2600 W. Olive Avenue, Suite 500
Burbank, CA 91505-4521
Telephone: 310.474.9111
Facsimile: 310.474.8585

Bradley K. King (SBN 274399)
*bking@ahdootwolfson.com*
**AHDOOT & WOLFSON, PC**
521 Fifth Avenue, 17th Floor
New York, NY 10175
Telephone: 917.336.0171
Facsimile: 917.336.0177

*Attorneys for Plaintiff and the Proposed Class*